IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

DANIELLE GARBIN,

             Plaintiff,

vs.                                             No. 04-CV-409  JH/LFG

J. DANIEL LENAHAN; DANIELLE LENAHAN;
LENAHAN LAW OFFICES; and ACCOUNT
MANAGEMENT SERVICES, L.L.C.,

             Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on an evidentiary hearing for damages

conducted on October 7, 2004.  Plaintiff Danielle Garbin, represented by counsel Richard

Feferman, Esq., Feferman & Warren, appeared personally.  Defendants did not appear personally

or through counsel.  The Court having considered the pleadings, affidavits, testimony, exhibits,

relevant law, and being otherwise fully informed, makes the following Findings of Fact and

Conclusions of Law.  The Court also enters the following Final Judgment Order.

### FINDINGS OF FACT

The Court makes its Findings of Fact pursuant to Federal Rule of Civil Procedure 52.

"Because of the default entered against [Defendants], the Court accepts as true all of the factual

allegations of the complaint, except those relating to damages."  *Gervais v. O'Connell, Harris &*

*Assocs.*, 297 F. Supp. 2d 435, 438 (D. Conn. 2003) (citation omitted).  Although the evidence

submitted by Plaintiff Garbin at the October 7, 2004, hearing supports some of the Court's

Findings of Fact with respect to liability, the Court bases the majority of its Findings of Fact on

the allegations in the Complaint.  The Court bases all of its Findings of Fact with respect to damages on the evidence presented at the October 7, 2004, hearing.

I.      <u>Jurisdiction and Parties</u>.

1.  A copy of the summons and Complaint were served on Defendant AMS, Defendant Lenahan Law Offices, Defendant J. Daniel Lenahan, and Defendant Danielle Lenahan.  All Defendants nonetheless failed to appear or otherwise defend against the allegations in Plaintiff Garbin's Complaint.  The United States District Court Clerk entered default against Defendants on June 30, 2004.  *See* Clerk's Entry of Default.

2.  Defendant Lenahan Law Offices is an entity whose principal business is the collection of consumer debts.  It regularly collects or attempts to collect debts and has been engaged by multiple creditors to collect debts.  *See* Compl. ¶ 6.

3.  Defendants J. Daniel Lenahan and Danielle Lenahan are father and daughter lawyers licensed to practice law in New York.  Defendants Mr. and Ms. Lenahan regularly collect and attempt to collect debts and have been engaged by numerous creditors to collect debts.  *See* Compl. ¶¶ 7, 8.

4.  Defendant Account Management Services, L.L.C. ("AMS") is a national debt collection company.  Defendant AMS's principal business is the collection of consumer debts, and it regularly collects or attempts to collect debts.  Defendant AMS has been engaged by multiple creditors to collect debts.  *See* Compl. ¶ 9.

5.  Defendant AMS operates Defendant Lenahan Law Offices' debt collection business.  Defendants Mr. and Ms. Lenahan allow Defendant AMS to "rent" their law licenses.  *See* Compl.

¶¶ 31, 50.

      6.   Defendants Mr. and Ms. Lenahan, through a series of contractual arrangements, employed the persons who attempted to collect Plaintiff Garbin's debt.  *See* Compl. ¶ 45.

      7.   Defendants Lenahan Law Offices and AMS use the same post office box in Buffalo, New York to conduct business.  Defendant AMS is located at 65 Great Arrow Drive in Buffalo. Defendant Lenahan Law Office also sends mail from and accepts mail at this address.  *See* Compl. ¶ 31; *see also* Mot. for Damages Hrg., Exh. A (Letter from J. Sortino to R. Treinen, dated Aug. 2, 2004).  Jack Sortino, an individual Defendant Mr. Lenahan refers to as his firm's compliance officer, also sends mail on letterhead with this address.  *See id.*

      8.   Defendants Mr. and Ms. Lenahan's letterhead indicates that they operate under the name "Lenahan Law Office."   The address on their letterhead is 1299 Union Road, Suite 5, West Seneca, New York.  *See* Pl's. Hrg. Exh. I (Letter to R. Treinen, dated July 8, 2004).

      9.   Neither Defendants Mr. nor Ms. Lenahan oversees or supervises the debt collection efforts of Defendant AMS.  *See* Compl. ¶¶ 1, 33, 34.  Defendants Mr. and Ms. Lenahan allow Defendant AMS to act as their agent by permitting Defendant AMS to use the name "Lenahan Law Offices" in collecting debts.  *See* Compl. ¶ 32.

II.   <u>Defendants' Conduct</u>.

      10.   Defendant Lenahan Law Offices first contacted Plaintiff Garbin at work by telephone on January 21, 2004.  That day, a person identifying himself as "Shane Spencer" of Lenahan Law Offices called Plaintiff Garbin at work twelve times.  In the first telephone call, Mr. Spencer threatened to have Plaintiff Garbin arrested if she did not pay a debt she owed on her Visa card.

Mr. Spencer also threatened to "slap a judgment on [Plaintiff]."  Plaintiff Garbin offered to pay $500.00 and then pay $200.00 each month until she paid off the debt.  Mr. Spencer refused this offer and hung up the telephone on Plaintiff Garbin.  *See* Compl. ¶¶ 10, 11; Hrg. Tr. p. 10, line 5.

11.  Mr. Spencer immediately called back and threatened to foreclose on Plaintiff Garbin's house if she did not pay the debt.  Mr. Spencer put an employee "Angela Burdorf" on the telephone, and Ms. Burdorf screamed at Plaintiff Garbin, rejected Plaintiff Garbin's proposed payment schedule, and demanded full payment of the debt immediately.  Plaintiff Garbin provided Ms. Burdorf with her home and cellular telephone numbers and asked not to be contacted at work again.  *See* Compl. ¶ 12.

12.  Mr. Spencer nonetheless telephoned Plaintiff Garbin at work ten more times that day. Mr. Spencer informed Plaintiff Garbin that he was calling on behalf of an attorney, but refused to inform Plaintiff Garbin of the attorney's name.  Mr. Spencer repeatedly threatened to have Plaintiff Garbin arrested, garnish her wages and bank account, and foreclose on her house.  Mr. Spencer stated that the paperwork already was in place to garnish Plaintiff Garbin's wages. Plaintiff Garbin repeatedly asked Mr. Spencer not to call her at work.  *See* Compl. ¶¶ 13, 14.

13.  On January 22, 2004, Defendant Lenahan Law Offices faxed a letter to Plaintiff Garbin's employer requesting her home and work contact information, despite the fact that Defendant Lenahan Law Offices already had this information.  The letter was sent on Defendant Lenahan Law Offices' letterhead.  *See* Compl. ¶ 15 and Exh. A.

14.  Mr. Spencer continued to call Plaintiff Garbin primarily at work, but also at home and on her cellular telephone, multiple times a day nearly every work day.  For example, Defendant

-4-

Lenahan Law Offices contacted Plaintiff Garbin at least 51 times at work between January 21, 2004 and February 4, 2004, and the calls continued through February 13, 2004.  During the calls, Mr. Spencer repeatedly threatened to have Plaintiff Garbin arrested, garnish her wages and bank account, and foreclose on her home.  Plaintiff Garbin repeatedly requested not to be contacted at work.  *See* Pl.'s Hrg. Exh. P (log of telephone calls); Compl. ¶ 16.

15.  Plaintiff Garbin could not avoid Mr. Spencer's telephone calls.  Plaintiff Garbin is employed as a telephone billing specialist and as part of her job she must answer telephone calls on her line.  *See* Hrg. Tr. p. 11, lines 19-15, and p. 12, lines 1-16.

16.  Within the first week after the calls began, Plaintiff Garbin's supervisor informed her that she could not receive calls from Defendant Lenahan Law Offices because it was affecting her performance at work.  *See* Compl. ¶ 19.

17.  On January 27, 2004, a person who identified himself as "Mr. McCallister" of the "law offices of prosecuting attorney Daniel J. Lenahan" left a message on Plaintiff Garbin's home answering machine stating that "[t]he entitled action . . . will proceed . . . and any and all recorded conversations with you, and our duly documented case notes will be forwarded to your local county clerk's office, and this matter will be pursued to the fullest extent of the law."  Mr. McCallister asked Plaintiff Garbin to contact him within 48 hours and to refer to her "pending civil case number," which he provided in his message.  *See* Compl. ¶ 20.

18.  Mr. Spencer telephoned Jay Coon, Plaintiff Garbin's former husband, and left a telephone message for Mr. Coon's current wife Michelle Coon stating that a matter "needed to be resolved within 24 hours."  Mr. Coon left a message for Mr. Spencer informing him that Plaintiff

Garbin did not live at his residence.  Mr. Spencer telephoned and spoke to Ms. Coon.  Mr. Spencer informed Ms. Coon that Defendant Lenahan Law Offices was involved in a lawsuit pending against Plaintiff Garbin, and that the lawsuit involved Plaintiff Garbin "being mean to some people in an office."  *See* Compl. ¶¶ 21-23.

19.  Plaintiff Garbin retained counsel to prevent further harassment.  On February 4, 2004, Plaintiff Garbin's counsel sent a letter via facsimile to Defendant Lenahan Law Offices requesting that Defendant Lenahan Law Offices "cease all communication with [Plaintiff] immediately." Counsel also requested that the owner of the law firm contact him.  Defendant Lenahan Law Offices, however, continued to call Plaintiff, including at work.  When Mr. Spencer contacted Plaintiff Garbin after Plaintiff Garbin's counsel sent the cease-contact letter, Plaintiff Garbin repeatedly informed him that she was represented by counsel.  Mr. Spencer responded by calling Plaintiff Garbin a "liar" and continuing to call her at work, at home, and on her cellular phone. Plaintiff Garbin's counsel sent Defendant Lenahan Law Offices a second letter on February 13, 2004, reiterating his requests.  Defendant Lenahan Law Offices did not contact Plaintiff Garbin's counsel.  *See* Compl. ¶¶ 24-28; *see also* Pl.'s Hrg. Exh. P (log of telephone calls); Hrg. Tr. p. 18, lines 2-24.

20.  Mr. Spencer's telephone calls did not stop until February 13, 2004.  *See* Hrg. Tr. p. 19, line 8.

21.  To date, Defendant Lenahan Law Offices has not filed suit against Plaintiff Garbin or taken any action to enforce its threats, despite the fact that Defendant Lenahan Law Offices stated that its threatened actions against Plaintiff Garbin were imminent.  *See* Compl. ¶ 29.

22.  Defendant Lenahan Law Offices falsely stated that its threatened actions against Plaintiff Garbin were imminent.  Defendant Lenahan Law Offices did not intend to enforce and could not enforce any of its threats.  *See* Compl. ¶¶ 17, 30.

23.  Defendant Mr. Lenahan sent Plaintiff Garbin's counsel a letter dated July 8, 2004, indicating that he was enclosing a "copy of *our* mandatory law office policy that every *employee* must sign."  *See* Pl.'s Hrg. Exh. I (Letter dated July 8, 2004) (emphasis added).  The office policy attached to the July 8th letter indicates that Lenahan Law Office's debt collectors "are representing a law firm" and that "[i]f an individual insists on speaking to an attorney, please . . . [g]ive them *our* direct number . . . [or] [c]onnect the person to our voice mail extension."  *Id.* (emphasis added).

24.  In addition, the office policy attached by Defendant Mr. Lenahan indicates that Defendant Mr. Lenahan expressly authorizes his debt collectors to "represent to a debtor that legal action or civil action **WILL BE** (NOT ALREADY HAS BEEN TAKEN) taken if a debt is not paid or one refuses to pay."  *See id.* (emphasis in original).

25.  Defendants Mr. and Ms. Lenahan authorized or ratified the tortious conduct of the collectors through various means, including the acceptance of fees and monies generated by the collectors' activities.  *See* Compl. ¶¶ 46, 50.

26.  Defendants Mr. and Ms. Lenahan knew or should have known that the actions of their debt collectors violated the law.  *See* Compl. ¶ 49.

27.  Defendants Mr. and Ms. Lenahan knew that the conduct of their debt collectors violated the FDCPA well before the conduct alleged in Plaintiff Garbin's Complaint occurred.

For example, in September 2003, Defendant Danielle Lenahan sent a check to an attorney for $12,750.00 to settle three FDCPA cases pending against Lenahan Law Offices and J. Daniel Lenahan.  *See* Pl's. Hrg. Exh. M (Aff. of J. Faulkner and attached check).  Defendant Ms. Lenahan sent the check with a letter on Lenahan Law Office letterhead with the West Seneca, New York address.  *See id.*

28.   Defendant Lenahan Law Offices also settled another case alleging violations of the FDCPA for $3,000.00.  Counsel for the plaintiff in that case received a check from "Lenahan and Lenahan" and "AMS," dated February 10, 2004.  Defendants Mr. and Ms. Lenahan were aware or should have been aware of the unlawful conduct of the debt collectors in that case before or during the course of the unlawful conduct toward Plaintiff Garbin.  *See* Pl's. Hrg. Exh. H (Aff. of Jason M. Rapa and attached check for $3,000.00).  In addition, Defendants Mr. and Ms. Lenahan were aware or should have been aware of another case that was filed in December 2003 seeking damages from Lenahan Law Offices for unlawful debt collection measures.  *See* Pl's. Hrg. Exh. K (Compl., *Garza v. Lenahan Law Offices LLC*, No. 03-4384-3 (74th Dist., Tex.).

29. Defendants Mr. and Ms. Lenahan failed to supervise or monitor Defendant AMS adequately in its contact with Plaintiff Garbin.  Defendants Mr. and Ms. Lenahan have not taken any action to discipline the persons who contacted Plaintiff Garbin or to ensure that these persons no longer engage in unlawful conduct.  *See* Compl. ¶¶ 33, 34.

30.   Defendant Lenahan Law Offices' calls were placed with the intention to annoy, abuse or harass Plaintiff Garbin.

31.   Defendants AMS's, Lenahan Law Offices' and Mr. and Ms. Lenahan's conduct was

knowing, willful, and intentional.  Their conduct also was frequent, persistent, and regularly not in compliance with the FDCPA.  *See* Compl. ¶ 35.

III.    <u>Damages</u>.

32.  As a result of Defendants' actions, Plaintiff Garbin suffered actual damages, including aggravation, inconvenience, lost time, anxiety, humiliation, fear, and upset.  In addition, Plaintiff Garbin severely was intimidated, harassed, abused, embarrassed and terrified by the extreme and outrageous acts of Defendants.  *See* Hrg. Tr. p. 10, lines 6-12, p. 13, lines 1-20, p. 15, lines 7-24, p. 17, lines 4-8, p. 19, lines 21-25, p. 20, lines 1-9.

33.  Plaintiff Garbin's demeanor changed drastically as a result of Defendants' conduct.  Plaintiff Garbin normally is friendly, outgoing, and upbeat at work.  As a result of Defendants' conduct, Plaintiff Garbin was drained and depressed, had trouble finishing her work, and could not function at work.  Plaintiff Garbin also cried at work on numerous occasions.  *See* Hrg. Tr. p. 10, lines 6-12, p. 13, lines 4-20, p. 17, lines 4-8, p. 26, lines 16-25, p. 27, lines 1-8, p. 30, lines 17-25, p. 31, line 1, p. 34, lines 24-25.

34.  At least thirty people in Plaintiff Garbin's department knew of one or more of Defendants' debt collection actions toward Plaintiff Garbin.  *See* Hrg. Tr. p. 20, lines 12-17.

35.  Plaintiff Garbin suffered these actual damages constantly over a period of three weeks.  *See* Hrg. Tr. p. 16, lines 18-21, p. 18, lines 2-25, p. 19, lines 1-8, p. 28, line 6, p. 27, lines 11-14; Pl.'s Hrg. Exh. P (log of telephone calls).

36.  Plaintiff Garbin reasonably incurred attorney's fees and costs in bringing this action.  *See* Pl.'s. Hrg. Exh. N (Supp. Declr. of R. Feferman).

## CONCLUSIONS OF LAW

37. This Court has jurisdiction over Plaintiff Garbin's Fair Debt Collection Practices Act claim pursuant to 15 U.S.C. § 1692 and 28 U.S.C. Section 1331 and 1337. This Court has supplemental jurisdiction over Plaintiff Garbin's state claims pursuant to 28 U.S.C. Section 1367. Venue is proper under 28 U.S.C. Section 1391(b). This Court has personal jurisdiction over Defendants Mr. and Ms. Lenahan, AMS, and Lenahan Law Offices. Defendants have failed to appear or otherwise defend against this action. Judgment by default therefore is appropriate.

I.    Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.*

    A.    Liability.

38. To obtain a default judgment, Plaintiff Garbin need not prove the factual allegations in the Complaint to establish liability. Rather, the court accepts as true the factual allegations related to liability. *See, e.g.*, *Gervais v. O'Connell, Harris & Assocs.*, 297 F. Supp. 2d 435, 438 (D. Conn. 2003) (citation omitted). "[L]iability, however, is not necessarily established merely because of the default, as a defendant cannot be said to 'admit' conclusions of law through default." *Evanauskas v. Strumpf*, No. 00-CV-1106, 2001 U.S. Dist. LEXIS 14326, *4 (D. Conn. June 27, 2001). Therefore, before judgment can be entered, the Court "must determine whether plaintiff's factual allegations are sufficient to state a claim for relief on each of the causes of action for which the plaintiff seeks judgment by default." *Id.* (citation omitted); *see also* 10 Charles A. Wright, Arthur R. Miller, & Mary K. Kane, Federal Practice and Procedure § 2688)).

    1.    Does the FDCPA Protect Plaintiff Garbin and Constrain Defendants?

39. The FDCPA protects "consumers" from abusive debt collection practices. *See* 15

U.S.C. § 1692(e).  A "consumer" is defined as "any natural person obligated or allegedly

obligated to pay any debt."  15 U.S.C. § 1692a(3).  Plaintiff Garbin falls within this definition of

"consumer," and therefore is protected by the provisions of the FDCPA.

40.  The FDCPA defines "debt collector" as "any person who uses any instrumentality of

interstate commerce or the mails in any business the principal purpose of which is the collection of

any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or

due or asserted to be owed or due another."  15 U.S.C. § 1692a(6).

41.  Defendants Lenahan Law Offices and AMS are "debt collectors" within the meaning

of the FDCPA.  Defendants Lenahan Law Offices and AMS regularly collect or attempt to collect

debts due to another.  Accordingly, the FDCPA governs Defendants Lenahan Law Offices's and

AMS's conduct.

42.  The Court also must determine whether Defendants Mr. and Ms. Lenahan are "debt

collectors" within the meaning of the FDCPA.  Attorneys who collect debts are liable as debt

collectors under the FDCPA.  *See Heintz v. Jenkins*, 514 U.S. 291, 292 (1995); *Ditty v.*

*CheckRite, Ltd.*, 973 F. Supp. 1320, 1336-37 (D. Utah 1997).  In addition, a "high-ranking

employee, executive or director of a collection agency may fit within the statutory definition of a

debt collector."  *Musso v. Seiders*, 194 F.R.D. 43, 46 (D. Conn. 1999).

43.  Here, Plaintiff Garbin has alleged that Defendants Mr. and Ms. Lenahan regularly

collect or attempt to collect debts due to another.  In addition, Plaintiff Garbin has alleged facts

sufficient to demonstrate that Defendants Mr. Lenahan and Ms. Lenahan are affiliated with

Defendants AMS and Lenahan Law Offices and that they employed the persons engaging in the

-11-

collection activities towards Plaintiff Garbin.  *See* Compl. ¶ 1, 13, 20, 32, 45, 45, 49, 50; *see also* Pl's. Hrg. Exh. I (Letter dated July 8, 2004) (office policy attached to letter indicates that Lenahan Law Office's debt collectors "are representing a law firm" and that "[i]f an individual insists on speaking to an attorney, please . . . [g]ive them our direct number . . . [or] [c]onnect the person to our voice mail extension").  Defendants Mr. and Ms. Lenahan therefore are debt collectors within the meaning of the FDCPA.

44.  The Complaint also contains allegations sufficient to demonstrate that Defendants Mr. and Ms. Lenahan personally were involved with the collection efforts.  A plaintiff seeking to impose liability on a high-ranking executive or director must allege and prove that the defendant personally was involved in the collection of the debt at issue.  *See, e.g.*, *Musso*, 194 F.R.D. at 46.  A defendant who "kn[o]w[s] of the allegedly unlawful procedures being used but nevertheless approve[s] or ratifie[s] them" personally is involved in the collection of a debt.  *See id.* at 47.  Here, Plaintiff Garbin has alleged that Defendants Mr. and Ms. Lenahan knew or should have known that AMS's actions and the actions of the persons who contacted Plaintiff Garbin and others in connection with Plaintiff Garbin's debt were tortious and violated the FDCPA and that Defendants Mr. and Ms. Lenahan actually authorized and ratified the conduct of the collectors.  *See* Compl. ¶¶ 46, 49, 50.  In addition, Plaintiff Garbin has produced evidence at hearing that Defendants Mr. and Ms. Lenahan knew or should have known of other lawsuits against them alleging violations of the FDCPA, and that Defendants Mr. and Ms. Lenahan settled two lawsuits before or during the time the unlawful conduct towards Plaintiff Garbin commenced in this case.  *See supra* ¶¶ 27, 28.  Accordingly, Plaintiff Garbin has alleged facts sufficient to demonstrate that

Defendants Mr. and Ms. Lenahan personally were involved with the collection of the debt.

45.  Plaintiff Garbin also has demonstrated personal involvement by alleging facts indicating that Defendants Mr. and Ms. Lenahan were responsible for devising and implementing Defendants AMS's and Lenahan Law Offices' collection procedures.  At the damages hearing, Plaintiff Garbin presented evidence indicating that Defendant Mr. Lenahan sent Plaintiff Garbin's counsel a letter acknowledging his involvement with, and supervision of, the debt collection activities at issue here.  Defendant Mr. Lenahan enclosed with his letter a "copy of *our* mandatory law office policy that every *employee* must sign."  *See* Pl.'s Hrg. Exh. I (Letter dated July 8, 2004) (emphasis added).  By showing that Defendant Mr. Lenahan was responsible for devising and implementing Lenahan Law Offices' collection procedures, Plaintiff Garbin has demonstrated that he personally was involved in the collection of the debt.  *See Egli v. Bass*, No. 2:96CV790, 1998 U.S. Dist. LEXIS 13506, *4 (N.D. Ill. 1998).

46.  Because Defendants Mr. and Ms. Lenahan regularly collect or attempt to collect debts and because they personally were involved with the collection of Plaintiff Garbin's debt, Plaintiff Garbin has alleged facts sufficient to demonstrate that the FDCPA governs the conduct of Defendants Mr. and Ms. Lenahan.

       2.    <u>Violation of the FDCPA</u>.

           a.    <u>Acquisition of Location Information</u>.

47.  Section 1692b(1) of the FDCPA provides that any debt collector communicating with a third party shall "identify himself, state that he is confirming or correcting location information . . . , and only if expressly requested, identify his employer."  Plaintiff Garbin alleges that

Defendants sent her employer a letter on "Lenahan Law Offices" letterhead thereby identifying the name of the sender's employer.  This allegation states a violation of the FDCPA.

       b.      <u>Communication in Connection with Debt Collection</u>.

      48.  Section 1692c(a)(1) provides that "a debt collector may not communicate with a consumer at . . . a time or place known . . . to be inconvenient."  Section 1692c(a)(2) provides that a collector may not communicate with a consumer "if the debt collector knows the consumer is represented by an attorney."  Section 1692c(b) provides that except as provided in Section 1692b, a "debt collector may not communicate . . . with any person other than the consumer[ or] his attorney."  Plaintiff Garbin alleges that Defendants contacted Plaintiff Garbin repeatedly at work despite the fact that Plaintiff Garbin asked Defendants on numerous occasions not to contact her at work.  Plaintiff Garbin also alleges that Defendants contacted her after her counsel informed them that she was represented.  The Complaint further alleges that Defendants contacted Plaintiff Garbin's ex-husband's current wife in an attempt to embarrass, humiliate, and harass Plaintiff.  These allegations state a violation of the FDCPA.

       c.      <u>Harassment or Abuse</u>.

      49.  A debt collector "may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse," including "[c]ausing a telephone to ring or engaging any person in telephone conversation repeatedly or continuously with intent to annoy, abuse, or harass," and "plac[ing] telephone calls without meaningful disclosure of the caller's identity."  15 U.S.C. § 1692d(5) and (6).  "'The test [to determine whether a debt collector has violated the FDCPA] is how the least sophisticated consumer--one not having the astuteness of a Philadelphia lawyer or

even the sophistication of the average, everyday, common consumer--understands the [communications at issue].'" *Ferree v. Marianos*, No. 97-6061, 1997 U.S. App. LEXIS 30361, *5 (10th Cir. Nov. 3, 1997) (quotation omitted).

50.  Plaintiff Garbin alleges that Defendants called her relentlessly at work (including twelve times in one day and 51 times over the course of two weeks) despite the fact that she repeatedly requested no telephone calls at work.  The Complaint also alleges that in one call "Shane Spencer" indicated he was calling on behalf of an attorney but refused to identify the attorney on behalf of whom he was calling.  These allegations state a violation of the FDCPA.

d.   <u>False or Misleading Representations</u>.

51.  Section 1692e provides that (1) the "false representation of . . . the character, amount, or legal status of any debt," (2) the "representation or implication that nonpayment of any debt will result in . . . arrest or imprisonment[,] . . . seizure, garnishment, attachment, or sale of any property or wages . . . unless such action is lawful and the debt collector or creditor intends to take such action," (3) the "threat to take any action that cannot legally be taken or that is not intended to be taken," and (4) the "false representation or implication that the consumer committed any crime or other conduct in order to disgrace the consumer" shall violate the FDCPA.  *See* 16 U.S.C. § 1692e(2)(A), (4), (5), and (7) respectively.

52.  Plaintiff Garbin alleges that a person "who identified himself as 'Mr. McCallister' of '. . . the Law Offices of prosecuting attorney Daniel J. Lenahan' left a message" stating that Plaintiff Garbin should contact him within 48 hours and refer to her "pending civil matter case number." This statement constitutes a false representation of "the character, amount, or legal status of any

debt," in violation of Section 1692e(2)(A), because the statements imply that Defendants already have filed an action against Plaintiff Garbin.  Plaintiff Garbin also alleges that Defendants threatened to have her arrested, her wages and bank account garnished, and her home foreclosed upon, without any intent or ability to do so.  These allegations state a claim for a violation of Section 1692e(4) because they  "impl[y] that nonpayment . . . will result in . . . arrest . . . [or] garnishment" when Defendants did not intend to take such action.  These threats also violate Section 1692e(5) because Defendant is "threat[ening] to take . . . action . . . that is not intended to be taken," and Section 1692e(7) because Defendants have made a "false representation or implication that the consumer committed a[] crime."

> e.    Unfair Practices.

53.  Section 1692f(6)(A) provides that "threatening to take any nonjudicial action to effect dispossession . . . of property if . . . there is no present intention to take possession of the property" is unlawful.  Plaintiff Garbin alleges that Defendants threatened to take various actions, such as garnishing wages and accounts and foreclosing upon her house but that Defendants did not have a present intention to undertake these actions.  These allegations state a claim for relief under the FDCPA.

> B.    Damages Under the FDCPA.

54.  The FDCPA provides that the total damage award for violation of its provisions is the sum of "any actual damage sustained by such person" plus additional statutory damages up to $1,000.00.  15 U.S.C. § 1692k(a)(1) and (2)(A).  A plaintiff also may seek costs and reasonable attorney's fees.  *See* 15 U.S.C. § 1692k(a)(3).

1.    <u>Actual Damages</u>.

55.   Actual damages under the FDCPA includes both economic and emotional damages. *See Gervais*, 297 F. Supp. 2d at 438 ("[t]he FDCPA permits a court to award damages for emotional distress") (citation omitted); *see also* 53 F.R. 50097-50100, § 813-2 (Dec. 13, 1988) (Federal Trade Comm'n Commentary); *Pike v. National Check Bureau*, No. 02-CV-368 (D.N.M.) (Johnson, J.).   A plaintiff can establish actual damages for emotional distress without proving the state law elements of intentional infliction of emotional distress. *See, e.g.*, *Smith v. Law Office of Mitchell N. Kay*, 124 B.R. 182, 188 (D. Del. 1991).

56.   To determine the amount of actual damages in this case, the Court must consider "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional."   15 U.S.C. § 1692k(b)(1).   Here, Defendants violated numerous provisions of the FDCPA on a regular basis over the course of three weeks.   The frequency and persistence of the noncompliance therefore was severe.   In addition, the nature of Defendants' noncompliance was egregious.   The evidence also indicates that Defendants' noncompliance was intentional.   Plaintiff Garbin repeatedly asked Defendants to stop calling her at work, but Defendants nonetheless continued to call Plaintiff Garbin relentlessly at work.   Defendants also continued to contact Plaintiff Garbin despite the fact that Plaintiff Garbin's counsel sent Defendants a letter indicating that Plaintiff Garbin was represented and that all communications with Plaintiff Garbin should cease.   These allegations support a claim that Defendants intentionally violated the FDCPA.

57.   Courts have awarded a wide range of actual damage awards for emotional harms

-17-

under the FDCPA.  *See, e.g.*, *Becker v. Montgomery, Lynch*, No. 02-CV-874, 2003 U.S. Dist.

LEXIS 24992, *2-3 (N.D. Ohio Feb. 26, 2003) (awarding $250.00 for actual damages for

emotional distress under the FDCPA where defendant sent a letter to the plaintiff stating that

"[e]xperience has shown us that when the proper attitude is displayed . . . a rapid disposition of

such matters can be arranged, and no extra cost, humiliation, or hard feelings need arise," and that

"you [should] remit the balance in full or talk this matter over with me at once"); *Gervais v.*

*O'Connell, Harris & Associates, Inc.*, 297 F. Supp. 2d 435, 440 (D. Conn. 2003) (awarding

$1,500.00 in damages for emotional harm where defendant attempted to secure payment on a

debt that was not owed, lied to plaintiff about the validity of the debt, falsely purported to be an

attorney, and coerced plaintiff to make a payment of $2,500.00, because the events were "brief in

time," the defendant "never expressly threatened [plaintiff]," the incident did not result in medical

care, and plaintiff regularly took anxiety pills for fears unrelated to the events in question); *Pike v.*

*National Check Bureau*, Final Order Granting Default Judgment, No. 02-CV-368 (D.N.M.)

(Johnson, J.) (awarding $15,000.00 in actual damages for emotional distress where defendant

contacted plaintiff orally after written contact was requested, used abusive language, threatened

to bring civil lawsuit, pursue "felony fraud charges," and initiate wage garnishment, faxed

plaintiff's employer requesting confidential information, identified defendant debt collection

agency as the sender of the letter, and failed to notify plaintiff of his right to dispute the debt's

validity); *McHugh v. Check Investors, Inc.*, No. 02-CV-106, 2003 U.S. Dist. LEXIS 9065 (W.D.

Va. May 21, 2003) (awarding $26,163.00 in damages on an intentional infliction of emotional

distress claim premised on unlawful debt collection measures where defendants violated eleven

provisions of the FDCPA by sending plaintiff a letter falsely claiming that the plaintiff owed $148.78, threatening criminal arrest, prosecution, and jail time, falsely claiming to be an attorney, using abusive language, and requesting the whereabouts of plaintiff's child and family members).

58. Based on the frequency and persistence of Defendants' noncompliance, the nature of the noncompliance, and the extent to which such noncompliance was intentional, 15 U.S.C. § 1692k(b)(1), and considering the damage awards of other courts, the Court awards $20,000.00 to Plaintiff in actual damages.

2.    Statutory Damages.

59.   Section 1692k(a)(2) of the FDCPA provides in relevant part that a court may award "such additional damages as the court may allow, but not exceeding $1,000." *See also Harper v. Better Business Servs., Inc.*, 961 F.2d 1561, 1562 (11th Cir. 1992). Statutory damages are available without regard to the presence of actual damages. *See Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 781 (9th Cir. 1982). The FDCPA provides that in determining statutory damages, the Court should consider the same factors that it considered in determining actual damages. *See* 15 U.S.C. § 1692k(b)(1). This Court has awarded the statutory maximum in other FDCPA cases. *See, e.g.*, *Kraehe v. Allied Interstate*, No. 03-CV-1234 (D.N.M.) (Black, J.); *Pike*, No. 02-CV-368 (D.N.M.) (Johnson, J.); *Bitah v. Global Collection Servs., Inc.*, 95-CV-736 (D.N.M.) (Black, J.); *Toledo v. McNeel*, No. 94-DV-1280 (D.N.M.) (Vázquez, J.). After considering the statutorily-mandated factors, and based on the relatively egregious, persistent, and intentional nature of Defendants' conduct, the Court awards Plaintiff Garbin $1,000.00 in statutory damages.

3.      Costs and Attorney's Fees.

60.  Section 1692k(a)(3) provides in relevant part that "any debt collector who fails to comply with any provision of this subchapter . . . is liable . . . in the case of any successful action [for] the costs of the action, together with a reasonable attorney's fee."  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).  The multiplication of the reasonable number of hours expended by the reasonable hourly rate is referred to as the "lodestar" method.  *See Robinson v. City of Edmond*, 160 F.3d 1275, 1281 (10th Cir. 1998).

61.  In this litigation, Rob Treinen, an associate attorney at Feferman & Warren, expended 32.8 hours in the representation of Plaintiff Garbin at $150.00 per hour.  Richard N. Feferman, a senior partner at the firm, expended 13.3 hours in the case at the rate of $250.00 per hour.  Charlotte Chesak spent 1.1 hours on this case at the rate of $35.00 per hour.  This Court most recently approved the $150.00 hourly rate for Mr. Treinen and the $250.00 hourly rate for Mr. Feferman in *Hernandez v. Enchantment Auto Sales, Inc.*, No. 02-CV-1399 (D.N.M.) (Puglisi, J.).  The Court agrees that a reasonable hourly rate for an attorney of Mr. Treinen's experience is $150.00 per hour, that a reasonable hourly rate for an attorney of Mr. Feferman's experience is $250.00 per hour, and that a reasonable hourly rate for Ms. Chesak is $35.00 per hour.  The Court, after reviewing counsel's billing statements, also believes that 47.2 hours of work over the course of seven months is a reasonable amount of time spent on Plaintiff Garbin's case.  The Court therefore awards Plaintiff Garbin $8,293.50 in attorney's fees.

62. The Court also awards Plaintiff Garbin $502.79 to reimburse her for the gross receipts taxes owed on the attorney's fees. *See Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) (approving the award of gross receipts taxes as part of the costs of a lawsuit); *Begay v. First Security Bank*, CV-96-348 (Vázquez, J.) (same); *Amos v. Gilbert Western Corp.*, 103 N.M. 631, 637, 711 P.2d 908, 914 (N.M. 1985) (same). In addition, the Court also awards attorney's fees and costs for any post-judgment collection activities that Plaintiff Garbin may need to undertake. *See Nunez v. Interstate Corporate Systems, Inc.*, 799 P.2d 30, 31-32 (Ariz. Ct. App. 1990); *Kraehe v. Allied Interstate*, No. CV-03-1234 BB/LFG, Final Order Granting Default Judgment (D.N.M. 2004) (Black, J.).

63. Furthermore, Plaintiff Garbin incurred $787.90 in costs for the filing and jury fee, service costs (including mailing costs for the process server), legal research costs, costs expended in an effort to locate former employees of Defendants, costs to obtain certified copies of pleadings and judgments against Defendants, and witness fees. These costs reasonably were incurred and the Court therefore awards Plaintiff Garbin $787.90.

II.  New Mexico Unfair Practices Act, N.M. Stat. Ann. § 57-12-1 *et seq.*

A.  Liability Under the NMUPA.

64. "Unfair or deceptive trade practices and unconscionable trade practices in the conduct of any trade or commerce are unlawful" under the New Mexico Unfair Practices Act ("NMUPA"). N.M. Stat. Ann. § 57-12-3. The NMUPA defines "unfair or deceptive trade practices" as "a false or misleading oral or written statement, visual description or other representation of any kind knowingly made . . . in the collection of debts by a person in the

-21-

regular course of his trade or commerce, which may, tends to or does deceive or mislead any

person," including but not limited to "using exaggeration, innuendo or ambiguity as to a material

fact or failing to state a material fact if doing so deceives or tends to deceive" and "stating that a

transaction involves rights, remedies or obligations that it does not involve."  N.M. Stat. Ann. §

57-12-2(D)(14) and (15).  The allegations in the Complaint described herein state a claim for

relief under the NMUPA.

       B.    <u>Damages Under the NMUPA</u>.

65.  The NMUPA provides that a party may recover "actual damages or the sum of one

hundred dollars . . . whichever is greater."  N.M. Stat. Ann. § 57-12-10(B).  The NMUPA further

provides that where a party "has willfully engaged in the trade practice, the court may award up

to three times actual damages or $300, whichever is greater."  *Id.*  The NMUPA also provides for

reasonable attorney's fees and costs.  *See id.* § 57-12-10(C).

66.  New Mexico case law indicates that Plaintiff Garbin cannot recover actual damages

under the NMUPA for emotional harm.  "Recovery of damages under [the NMUPA] includes

only those persons 'who suffer any loss of money or property.'"  *Page & Wirtz Constr. Co. v.

Solomon*, 110 N.M. 206, 211, 794 P.2d 349, 354 (N.M. 1990) (quoting N.M. Stat. §

57-12-10(B)).  "[T]he aggrieved party must produce evidence of 'loss of money or property' as a

result of the practice."  *Id.* at 211-12, 794 P.2d at 354-55 (quoting N.M. Stat. Ann. § 57-12-

10(B)).  Here, neither the allegations of the Complaint nor the evidence at hearing indicate that

Plaintiff Garbin suffered economic damages.  Accordingly, Plaintiff Garbin's recovery is limited to

one hundred dollars.  *See id.* at 212, 794 P.2d at 355 (citation omitted).  Because the Court has

held that Defendants' conduct was willful, the Court trebles that award and grants Plaintiff Garbin

$300.00 in damages under the NMUPA.  *See* N.M. Stat. Ann. § 57-12-10(B).  The Court also

awards Plaintiff Garbin reasonable attorney's fees, including gross receipts taxes, and costs in the

total amount of $9,584.19 under the NMUPA.

67.  Plaintiff Garbin is entitled to only one compensatory damage award.  *See Bourgeous*

*v. Horizon Healthcare Corp.*, 117 N.M. 434, 439, 872 P.2d 852, 857 (N.M. 1994) (citing *Hood*

*v. Fulkerson*, 102 N.M. 677, 680-81 (N.M. 1985)).  She therefore must choose between the

compensatory damage awards under the FDCPA and the NMUPA.

C.     Injunction.

68.  "[I]njunctive relief [under the NMUPA] expressly is not conditioned upon proof of

monetary loss . . . ; monetary loss is 'not required.'"  *Page*, 110 N.M. at 211, 794 P.2d at 354

(quoting N.M. Stat. Ann. § 57-12-10(A)).  Although the NMUPA provides that any person

"likely to be damaged by an unfair or deceptive trade practice"  may obtain injunctive relief, N.M.

Stat. Ann. § 57-12-10(A), this provision does not in itself authorize the issuance of a state-wide

injunction to a single plaintiff bringing a case.  The statutory language merely defines the

individuals authorized to bring suit under the NMUPA.

69. The Court's inherent power to award an injunction is not limited by the NMUPA.  *See*

N.M. Stat. Ann. § 57-12-10(D).  The Court, however, declines to exercise that power to issue a

state-wide injunction against Defendants.  The evidence in this case does not support the issuance

of a broad, state-wide injunction.  Plaintiff Garbin presented no evidence that Defendants

presently are engaging in unlawful debt collection activities or unfair trade practices in New

Mexico.  Given the absence of any evidence that Defendants' conduct presently threatens any

New Mexico resident, the Court will not accept Plaintiff Garbin's invitation to issue a state-wide

injunction.

III.     Tortious Debt Collection.

70.  In *Montgomery Ward v. Larragoite*, the New Mexico Supreme Court affirmed the

award of tort damages for a defendant's "improper conduct" in "intentionally pursuing a person to

force payment of a debt."  81 N.M. 383, 385, 467 P.2d 399, 401 (N.M. 1970).  The creditor,

knowing that the debtor's brother did not owe the debt at issue, served a debt collection suit on

the brother at work in his supervisor's presence.  *See id.* at 384-85, 467 P.2d at 400-01  The

court held that this collection activity allowed the recovery of $7,500.00 in damages because the

action was akin to an invasion of privacy claim.  *See id.* at 385-86, 467 P.2d at 401-02.

71.  The allegations in Plaintiff Garbin's Complaint do not state a claim for relief under a

tortious debt collection theory because the damages alleged solely are emotional.  *See*

Restatement (Second) of Torts, § 436A ("If [an] actor's conduct is negligent . . . and it results in .

. . emotional disturbance alone, without bodily harm or other compensable damage, the actor is

not liable for such emotional disturbance"); *see also Smith v. City of Artesia*, 108 N.M. 339, 341,

772 P.2d 373, 375 (N.M. Ct. App. 1989).  Because under traditional tort concepts economic

harm is necessary, *see id.*, Plaintiff Garbin has not stated a claim for relief.  Accordingly, the

Court cannot award actual or punitive damages on this claim.

IV.     Negligent Hiring, Supervision, and Retention; Respondeat Superior.

72.   Under New Mexico law, a negligent hiring, supervision, and retention claim "is based on a duty flowing from the employer to the public to protect those whom the employer might reasonably anticipate would be injured as a result" of the tortious activity.  *Spencer v. University of N.M. Hosp.*, No. 22,702, 2004 N.M. App. LEXIS 26, * 8 (N.M. Ct. App. Feb. 12, 2004) (citation omitted), *cert. granted*, 91 P.3d 604 (N.M. Apr. 23, 2004) *and* 2004 N.M. LEXIS 424 (N.M. Oct. 14, 2004).  Even if the Court determines that Plaintiff Garbin's allegations establish duty, breach, and causation, the allegations also must establish damages.  *See, e.g.*, *Gervais*, 297 F. Supp. 2d at 438.  As described herein, Plaintiff Garbin only has alleged emotional harm. Plaintiff therefore cannot state a claim for relief, and the Court will not award actual or punitive damages on this ground.

V.      Respondeat Superior.

73.   The Court need not consider Plaintiff Garbin's argument that Defendants Mr. and Ms. Lenahan are liable under respondeat superior for the tortious activities of Defendants AMS and Lenahan Law Offices.  As described herein, Plaintiff Garbin has alleged emotional and not economic harm.  Plaintiff Garbin's allegations do not state a claim for relief, and the Court therefore cannot award actual or punitive damages under a respondeat superior theory.

## FINAL JUDGMENT ORDER

For the reasons stated above, **IT THEREFORE IS ORDERED** as follows:

1.  Plaintiff Garbin is granted a default judgment against Defendants AMS, Lenahan Law Offices, J. Daniel Lenahan, and Danielle Lenahan;

2.  Plaintiff Garbin is entitled to an actual damages award under the FDCPA of $20,000.00;

3.  Plaintiff Garbin is entitled to a statutory damages award under the FDCPA of $1,000.00;

4.  Plaintiff Garbin is entitled to an award of $9,584.19 for attorney's fees, costs, and gross receipts taxes under the FDCPA and the NMUPA;

5.  Plaintiff Garbin is entitled to an award of $300.00 under the NMUPA;

6.  Plaintiff Garbin will not be allowed to add her $20,000.00 actual damage award under the FDCPA and her $300.00 damage award under the NMUPA;

7. Defendants jointly and severally shall be liable to Plaintiff Garbin for all damages;

8.  Defendants must pay post-judgment interest, pursuant to 28 U.S.C. § 1961, according to the present statutory rate starting from the date this judgment is entered; and

9.  Plaintiff Garbin shall be entitled to collect attorney's fees and recoverable costs in the future to enforce this judgment, if such enforcement becomes necessary.

Dated this 29th day of October, 2004.


_____
JUDITH C. HERRERA
UNITED STATES DISTRICT COURT JUDGE


Attorney for Plaintiff:

        Richard Feferman, Esq.

Attorney(s) for Defendants:

        N/A